

JAN 0 3 2019

Clerk, U.S. District Court
Texas Eastern

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| CRAIG CUNNINGHAM, <br> Plaintiff, <br><br> v. <br><br> Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, David Perme, Robert Verkaik, and Bridget Pasquarello <br><br> **Defendant** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br><br> 4:19cv6 |

## Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County, 3000 Custer Road, ste 270-206, Plano Tx 75075.

2. Lifestyles Development, LLC is a Missiouri corporation that can be served via registered agent David Perme 430C S. Highway 165, Branson, MO 65616 or 595 Concord Ave., Branson, MO 65616.

3. David Perme is a natural person and corporate officer of Lifestyles Development, LLC and can be served at 101 State Drive, ste 250 Hollister, MO 65672.

4. RCI, LLC dba Resort Condominiums International, LLC is a Texas corporation that can be served via registered agent Corporate Creations Network, Inc., 2425 W. Loop South #200 Houston, Tx 77027

5. Florida Vacation Villas Club, Inc., is a Florida corporation an can be served via registered agent Thomas Daku and can be served at 2770 N. Poinciana Blvd., Kissimmee, FL 34746.

6. Robert Verkaik is a natural person and can be served at 2770 N. Poinciana Blvd., Kissimmee, FL 34746.

7. Bridget Pasquarello is a natural person and can be served at 2770 N. Poinciana Blvd., Kissimmee, FL 34746.

8. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

9. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

10. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and the sell goods and services to Texas residents, including the Plaintiff.

11. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of Lifestyles Development, LLC, RCI, LLC DBA

Resort Condominiums International, LLC, and Florida Vacation Villas Club, Inc.,

12. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit. Many of the defendants in this case are registered in Texas or have offices in Texas.

13. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

14. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

16. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by

the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

18. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

20. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

21. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

22. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

23. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

24. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

25. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

26. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted));

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

27. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

28. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

29. The Defendants in this case have placed at least 15 calls to the Plaintiff's cell phone 615-212-9191 without the Plaintiff's consent and unrelated to any emergency purpose. The calls were initiated using an automated telephone dialing system and pre-recorded message. The caller ID was 469-207-1254 and the calls, dates, and times follow below.

30. **November 2018:**

| Date/Time | Type | Number | Duration | Direction | Network |
|---|---|---|---|---|---|
| 23/11/2018 10:39 PM | call | (469) 207-1254 | 33s | inbound | cell |
| 23/11/2018 10:38 PM | call | (469) 207-1254 | 26s | inbound | cell |
| 23/11/2018 10:37 PM | call | (469) 207-1254 | 31s | inbound | cell |
| 23/11/2018 10:37 PM | call | (469) 207-1254 | 4s | inbound | cell |
| 21/11/2018 10:41 PM | call | (469) 207-1254 | 5m 13s | inbound | cell |
| 21/11/2018 10:40 PM | call | (469) 207-1254 | 26s | inbound | cell |
| 21/11/2018 10:33 PM | call | (469) 207-1254 | 16s | inbound | cell |
| 21/11/2018 10:13 PM | call | (469) 207-1254 | 19m 58s | inbound | cell |
| 21/11/2018 10:30 PM | call | (469) 207-1254 | 20s | inbound | cell |
| 21/11/2018 10:19 PM | call | (469) 207-1254 | 10m 50s | inbound | cell |

31. **December 2018:**

| Date/Time | Type | Number | Duration | Direction | Network |
|---|---|---|---|---|---|
| 29/12/2018 5:06 PM | call | (469) 207-1254 | 29s | inbound | cell |

| | | | | | |
|---|---|---|---|---|---|
| 27/12/2018 5:24 PM | call | (469) 207-1254 | 35s | inbound | cell |
| 24/12/2018 11:29 PM | call | (469) 207-1254 | 29s | inbound | cell |
| 21/12/2018 9:20 PM | call | (469) 207-1254 | 30s | inbound | cell |
| 21/12/2018 1:13 AM | call | (469) 207-1254 | 1m 20s | inbound | cell |

**Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC calls to the Plaintiff**

32. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that were initiated using an automated telephone dialing system. The calls were on behalf of Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC. The calls had a delay of 3-4 seconds of dead air before the trademarked audible tone of ViciDial's sounded giving the indication that the call was initiated using an automated telephone dialing system. The Plaintiff recieved calls directly from agents acting on behalf of Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC as well. The Plaintiff recieved at least 15 calls by or on behalf of the defendants.

33. Starting in November 2018, the Plaintiff recieved multiple calls from multiple spoofed and non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose or with the Plaintiff's consent.

34. All calls were from 469-207-1254 to 615-331-7262 on 11/21/2018 was initiated by an automated telephone dialing as indicated by a 3-4 second delay and the Vici Dial trademarked audible tone when then call connected. The agent falesly claimed he was calling by or on behalf of Embassy Suites and offered two roundtrip airline tickets and a free vacation of 3 day, 2 night hotel accomodation. The agent stated during the call that the travel seminar was to be scheduled at location in Carrolton, Tx on

Valwood parkway.

35. On November 21, 2018, the Plaintiff recieved an email from Blair Watson and resortscenter@americasawardcenter.com, Ex A and contained an attachment Ex B, which touted a vacation seminar at 1430 Valwod Park Way, suite 120, Carrolton, Tx 75006 on November 24, 2018, which corresponds to the address stated in the initial call.. The Plaintiff attended this timeshare presentation and was presented with documents Ex C which indicate the true entities on whose behalf the calls were being placed.

36. The documents specificially mention Lifestyles Development, LLC, RCI, LLC and refer to Florida Vacation Villas Club, LLC as well. At the top of the page, titled "pruchase agreement", it lists Lifestyles Development, LLC dba Lifestyles Access. This corresponds to the subject of the email which was *"Confirmation Letter Lifestyle Access Network"*. Additionally, the document states that Lifestyle Development, LLC is developing and constructing a resort known as "The Lodges at Indian Point Resort"

37. The paperwork indicated that the vacation points program is owned and administered by Resort Condominimums International (RCI) and that 30,000 annual RCI Vacation points were offered to the Plaintiff for purchase at $25,000.

38. A simple google search of "RCI Lodges at indian point" returned a property listing associated with the RCI website EX D for resort #DG57 indicating that the property is contracted with RCI as an available property.

39. Additionally, according to www.lifestylesvacationresorts.com/about-us.html, See Ex E, David Perme is the owner and managing member of Lifestyles Development, LLC and The advertised property, The Lodges at Indian Point Resort, is 100% under his

ownership and management.

40. According to the documents, the Plaintiff was offered the opportunity to purchase more RCI points by calling 844-225-5724, which is actually the number for Florida Vacation Villas Club, LLC a Florida corporation selling points on behalf and for the benefit of RCI, LLC. RCI, LLC and Florida Vacation Villas have a contract to sell points in Texas to Texas residents.

41. In the operating rules and regulations, "Purchase agreement" is defined as that agreement that each member has executed to and in favor of Developer, that among other things identifies the number of vacation points attributable to each member's usage rights, subject to those adjustment and modification rights reserved to RCI. In the document, Developer is defined as "Lifestyles Development, LLC dba Lifestyles Access.

42. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his monthly allotment.

43. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from the Defendants and his related entities consumed part of this capacity.

44. No emergency necessitated the calls

45. Each call was sent by an ATDS.

**Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, Knowing and Willful Violations of Telemarketing Regulations**

46. Mr. Cunningham asked for an internal do-not-call policy during the in person

presentation, but no internal do not call policy was provided.

47. Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, knowingly violated the TCPA by initiating automated calls with pre-recorded messages to the Plaintiff.

48. Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, never sent Mr. Cunningham any do-not-call policy.

49. On information and belief, Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, and did not have a written do-not-call policy while it was sending Mr. Cunningham text messages.

50. On information and belief, Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

51. Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, calls did not provide Mr. Cunningham with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

**David Akers, Robert Verkaik, and Bridget Pasquarello's Control over their respective corporate entities, including its Illegal Robocalling and Telemarketing**

52. At all times relevant to the claims alleged herein, David Akers, Robert Verkaik, and Bridget Pasquarello's were the corporate officer's and executives in charge of their

respective corporations Each and every call was placed on behalf of the corporate entites owned by David Akers, Robert Verkaik, and Bridget Pasquarello and was placed with their full knowledge and consent..

53. David Akers, Robert Verkaik, and Bridget Pasquarello were aware that their respective corporations, were sending automated, telemarketing calls en masse to people, including Plaintiff, and had recieved previous complaints about these types of calls

54. As their corporation's senior-most executives, David Akers, Robert Verkaik, and Bridget Pasquarello had the power to stop these spam campaigns.

55. As their corporation's , senior-most executive, David Akers, Robert Verkaik, and Bridget Pasquarello had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations. Despite being sued by the Plaintiff for illegal telemarketing, David Akers, Robert Verkaik, and Bridget Pasquarello continued to use the services of the exact same telemarketers and maintain the contracts with the other entities named, which resulted in the Plaintiff being called additional times on his behalf and at his direction.

56. Instead, David Akers, Robert Verkaik, and Bridget Pasquarello allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

### The Plaintiff's cell phone is a residential number

57. The text messages were to the Plaintiff's cellular phonne 615-348-1977, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use.

The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code 305.053**

58. The actions of Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, and her corporation violated Texas law by placing automated calls to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

59. The calls by Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendants Lifestyles Development, LLC, and Florida Vacation Villas Club, Inc., RCI, LLC DBA Resort Condominiums International, LLC, David Perme, Robert Verkaik, and Bridget Pasquarello jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOEs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 15 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G. An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,                     1/2/2019

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075